UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-60116-CR-RNS

UNITED STATES OF AMERICA,

vs.

VAN LAWSON WILLIAMS,

    Defendant.
_____/

**ORDER ADOPTING IN PART REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE ON MOTION
TO SUPPRESS AND SUSTAINING DEFENDANT'S OBJECTIONS**

THIS MATTER is before the Court upon Magistrate Judge Lurana S. Snow's Report and Recommendation [ECF No. 64] on Defendant Van Lawson Williams's Motion to Suppress Statements, Confessions, and/or Admissions [ECF No. 41]. The Court has carefully considered the Report and Recommendation, the Defendant's objections [ECF No. 65], the Government's response to Defendant's objections [ECF No. 68], and the transcript and video recording of Defendant's custodial interview and interrogation. For the reasons set forth below, the Court adopts in part the Report and Recommendation and sustains the Defendant's objections.

## Introduction

Defendant is charged with engaging in sex trafficking of minor girls in violation of 18 U.S.C. § 1591. Defendant was allegedly prostituting young girls, ranging from 12 to 16 years in age, at his Fort Lauderdale, Florida residence. He has moved to suppress statements obtained during custodial interrogation on May 16, 2012, arguing that he invoked his constitutional right to remain silent on multiple occasions, which the police officers ignored.

The Magistrate Judge held an evidentiary hearing on August 30, 3012. FBI Special Agent Regino Chavez provided testimony at the hearing concerning Defendant's arrest and transport to the Fort Lauderdale Police Department, and his interrogation by Agent Chavez and Police Detective Brittenum. A video recording and transcript of the interrogation were also introduced into evidence.

At the outset of the interrogation, the Defendant was told by Detective Brittenum, "before we really talk to you[,] we have to explain your rights to you and everything." The Defendant responded, "I don't even wanna talk," which prompted the Detective to inquire, "You don't want to know what's goin' on?" The video reveals the Defendant shaking his head from side to side while stating, "I mean, [nah], I, I ain't didn't nothin', so [it doesn't matter]."[1]

Despite this, Agent Chavez informed the Defendant that he was being questioned in connection with a federal case and proceeded to give Defendant the *Miranda* warnings. Thereafter, Defendant signed a waiver of his rights and proceeded to talk with the officers. Approximately half an hour into the interview, however, Defendant stated, "I don't wanna say no more." Yet, Agent Chavez immediately asked him, "Did you ever meet a girl named Eternity?" and the interview continued.

The Magistrate Judge granted the motion to suppress in part, finding that "any reasonable police officer in the circumstances would understand the words 'I don't wanna say no more' as an assertion by the Defendant of his right to remain silent." Mag. Order at 7. Therefore, according to the Magistrate Judge, "all questioning should have immediately ceased" following Defendant's statement. *See id.* The Magistrate Judge reached a different conclusion with respect to Defendant's statement, early in the interview, that "I don't' even wanna talk." She concluded that this statement was ambiguous and insufficient to invoke Defendant's right to remain silent:

> [T]he Defendant's remark, "I don't even wanna talk," prior to being advised of his Miranda rights was not a clear, unambiguous assertion of his right to remain silent. The undersigned notes that the Defendant immediately added that he meant that he hadn't done anything. Also, at that point, the interrogation had not yet begun, and before any questions were posed to the Defendant, he signed a written waiver of his Miranda rights.

*See id.* at 6.

The Defendant objects to this finding, arguing that the entire post-arrest interview should be suppressed. According to Defendant, "there was no ambiguity in his invocation of his rights even prior to Miranda," and "he need not be subject to further questioning once that statement declining to speak had been clearly asserted." Def. Obj. ¶ 7. The Government responds that the statement was equivocal and that the officers had a right to inquire and seek clarification, after which Defendant indicated a willingness to speak with them.

---

[1] The transcript describes the Defendant as stating, "I mean, I, I ain't didn't nothin', so [unintelligible]." A close and careful viewing of the video recording reveals, however, that the Defendant's statement was incorrectly transcribed. As noted above, his actual statement was, "I mean, [nah], I, I ain't didn't nothin', so [it doesn't matter]."

## Legal Standards

A party may challenge the findings in a magistrate judge's report by timely filing specific written objections. *See* Fed. R. Crim. P. 59(b)(2); *Macort v. Prem, Inc.*, 208 F. App'x. 781, 783 (11th Cir. 2006). When objections are filed, the district court reviews *de novo* the disputed portions of the magistrate judge's report and recommendations. *See United States v. Powell*, 628 F.3d, 1254, 1256 (11th Cir. 2010). "As the use of the phrase *de novo* implies, the district court's consideration of the factual issue must be independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988); *Macort*, 208 F. App'x at 783. Where the magistrate judge considered witness testimony, "the district court is obligated to review the transcript or listen to the tape-recording of those proceedings." *See LoConte*, 847 F.2d at 750. In considering any properly raised objections, "[t]he district judge may accept, reject, or modify the recommendation" of the magistrate judge. *See* Fed. R. Crim. P. 59(b)(3).

## Legal Analysis

The Court finds that the Defendant's entire post-arrest custodial interview must be suppressed. The Defendant clearly and unequivocally invoked his Fifth Amendment right to remain silent at the outset of the custodial interview, but the police proceeded to interrogate him.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), "the Supreme Court recognized that an accused has a constitutional right not to be compelled to make incriminating statements during the process of interrogation." *Valle v. Sec'y for Dep't of Corr.*, 459 F.3d 1206, 1214 (11th Cir. 2006). In *Michigan v. Mosley*, 423 U.S. 96 (1975), "the Supreme Court further clarified the contours of the *Miranda* right to remain silent, stating that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *United States v. Muhammad*, 196 F. App'x 882, 885 (11th Cir. 2006) (citations omitted).

"Where a defendant invokes his right to remain silent, the interrogation must cease," but "a suspect must articulate his desire to end questioning with sufficient clarity so that a reasonable police officer would understand that statement to be an assertion of the right to remain silent." *United States v. Racca*, 255 F. App'x 367, 370 (11th Cir. 2007). "The inquiry as to whether a suspect's invocation of his right to remain silent was ambiguous or equivocal is an objective one." *Medina v. Singletary*, 59 F.3d 1095, 1101 (11th Cir. 1995). While "an accused's post request responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself," the defendant's invocation "may be characterized as

ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself." *See Smith v. Illinois*, 469 U.S. 91, 99-100 (1984). "Thus, the determination of whether a suspect's right to cut off questioning was scrupulously honored requires a case-by-case analysis." *Medina*, 59 F.3d at 1101 (citations and alterations omitted).

Here, there is no ambiguity in the statement, "I don't even wanna talk." The statement itself is a clear and blunt indication that the Defendant did not wish to speak to police, and nothing that was said thereafter signaled otherwise. *Cf. Berghuis v. Thompkins*, 130 S.Ct. 2250, 2260 (2010) ("[The defendant] did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his 'right to cut off questioning.'"). In fact, when pressed if he would like more information before deciding not to speak, Defendant's immediate response was, "I mean, [nah], I, I ain't didn't nothin', so [it doesn't matter]," coupled with a shake of the head in the negative. Although this Defendant may not "speak with the discrimination of an Oxford don," *see Davis v. United States*, 512 U.S. 452, 459 (1994) (citation omitted), his wishes could not have been any plainer. Under such circumstances, the police had no business persisting in their questioning of him – irrespective of their desire to clarify the nature of the interrogation and obtain a waiver of Defendant's constitutional rights. This Court is unaware of any case law holding that where a defendant has clearly invoked his right to silence, police officers may nonetheless explain what their prospective questioning concerns and then proceed to Mirandize him. The rule is that "the interrogation must stop." *See United States v. Mikell*, 102 F.3d 470, 476 (11th Cir. 1996).

The Magistrate Judge concluded that the Defendant's statement ("I don't even wanna talk") was rendered ambiguous by his subsequent statement that "he hadn't done anything." Mag Order at 6. As already noted, however, Defendant's later statement did not make any less plain his prior invocation. If anything, when viewed in context on the video recording, Defendant's subsequent statement together with his body language reinforces his previously expressed desire to remain silent.

The Court also finds that the fact the interrogation had not yet begun and that prior to any questions being posed to the Defendant, he signed a written waiver of his *Miranda* rights does not make his original request ambiguous. A defendant may invoke his rights at any time, even before questioning begins, *see Miranda*, 384 U.S. at 473-74, and events subsequent to that time may not be used to cast retrospective doubt on the clarity of his initial invocation of silence, *see Smith*, 469 U.S. at 100.

The Government's arguments likewise do not support a finding of ambiguity in Defendant's initial statement.  The Government does not identify any case authority that would support such a finding here.  Instead, the Government simply provides a positive account of the relevant course of events and then concludes, baldly, that Defendant's invocation of silence was somehow equivocal in the face of the subsequent statements by the officers.[2]  The Court disagrees, for the reasons stated above.  The Defendant's initial statement did not require any clarification; and, even if it did, his subsequent response and shake of the head signaled his desire for the custodial interview to cease.  The police were obligated to "scrupulously honor" this request, *see Muhammad*, 196 F. App'x at 885, but failed to do so.[3]

## Conclusion

In conclusion, the Court finds that the entire post-arrest custodial interview of the Defendant must be suppressed.  Accordingly, it is hereby **ORDERED and ADJUDGED** that the Defendant's Objections [ECF No. 65] are **SUSTAINED** and the Magistrate Judge's Report and Recommendations [ECF No. 64] are **ADOPTED IN PART**.

**DONE and ORDERED** in chambers at Miami, Florida on September 26, 2012.

_____
ROBERT N. SCOLA, JR.
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of Record

---

[2] The Government's reliance upon a thirty-year old decision out of the Ninth Circuit, *United States v. Lopez-Diaz*, 630 F.2d 661 (9th Cir. 1980), is misplaced.  In *Lopez-Diaz*, the Court held that the defendant's *Miranda* rights were violated after he was questioned on a subject he had previously indicated an unwillingness to discuss.  *See id.* at 664-65.  The Ninth Circuit, distinguishing prior case law, found that the questioning "was not merely for the limited purpose of determining whether [the defendant] wanted to reconsider his decision to remain silent," but instead was "for the obvious purpose of eliciting incriminating evidence."  *See id.* at 665.  In reaching its decision, the court recognized that the police are permitted to seek clarification of a defendant's invocation of silence after a lapse in time from the initial questioning, but that no such lapse had occurred there.  *See id.* at 664-65.  Here, as in *Lopez-Diaz*, there was no lapse at all between the Defendant's statement and the police's purported clarification.  Nor was there any reason to seek clarification in the face of Defendant's plain statement, "I don't even wanna talk."

[3] This point is also illustrated later in the interview.  When the Defendant stated, "I don't wanna say no more," the police responded immediately with the question, "Did you ever meet a girl named Eternity?"  The officer's question in context is a non-sequitur, and is indicative of a clear disregard of Defendant's wish to remain silent in this case.  The Defendant's statement, "I don't wanna say no more," was a clear further invocation of his right to silence.  *See United States v. Muhammad*, 196 F. App'x 882, 885-86 (11th Cir. 2006) (defendant's "unequivocal statement during the interrogation that 'he did not want to talk to [the officer] anymore' was a clear invocation of his constitutionally protected right to cut off questioning and to remain silent").  The portion of the Magistrate Judge's Report and Recommendations finding that the police should have ceased all questioning after Defendant's statement is adopted.